# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

GERMAINE A ELCOCK,          )
                                   )
      Plaintiff,             )
                                   )
         v.                )      Case No. 12-1256
                                   )
CYNTHIA PETERSON, et al.,      )
                                   )
      Defendants.        )
                                   )

## OPINION

**JAMES E. SHADID, Chief U.S. District Judge:**

This cause is before the Court on Plaintiff's, Germaine A. Elcock, Motion for Summary Judgment and counter Motion for Summary Judgment by Defendants Kelly Davidson, Robin Lopeman and Sheryl Thompson.

## I.
## MATERIAL FACTS

On November 1, 2011 Plaintiff, Germaine A. Elcock, was an inmate in the custody of the Illinois Department of Corrections housed at the Dwight Correctional Center. On that date Corrections Officer Richardson noted injuries to the face of Moniqui Hampton, Plaintiff's cellmate. Defendant Kelly Davidson of Internal Affairs was notified. Davidson initiated an investigation assigning Cynthia Peterson, no longer a defendant in this case, to interview Hampton and Elcock.

On November 1, 2011, Plaintiff and inmate Hampton were each placed on investigative status. Inmate Hampton had initially claimed that she had fallen but later recanted, claiming that Plaintiff had assaulted her in their cell. She claimed that she feared reprisal from Plaintiff and

had not wanted to report the assault. The record substantiates that there were numerous scratches under Hampton's eyes and to her cheeks and forehead. (d/e 57 p.9).

Plaintiff denied that she had struck Hampton. Plaintiff did not show evidence of injury and specifically denied that she had suffered any injuries. On November 2, 2011, Ms. Peterson read Plaintiff a Miranda warning and asked her to respond to the allegations that she had assaulted Hampton. Plaintiff refused to answer any questions or participate in the investigation. Defendant Robin Lopeman of Internal Affairs wrote an inmate disciplinary report citing Plaintiff for assault and impeding or interfering with an investigation. (d/e 57-9). On December 1, 2011 Plaintiff underwent an Adjustment Committee Hearing at the prison. The Committee found her guilty of the offenses and recommended disciplinary action, that Plaintiff be confined to segregation for a 2 month period. Defendant Thompson, warden at Dwight Correctional Center, approved the recommendation. (d/3 57-10).

Plaintiff denies assaulting Hampton. She claims that defendants Lopeman and Davidson did not undertake a proper investigation, they wrote her a disciplinary ticket based on "untrustworthy statements" by Hampton and cited her for not cooperating in the investigation when she had asserted her Miranda rights, refusing to give a statement. Plaintiff alleges that Thompson wrongfully placed her in segregation based on the disciplinary actions initiated by Lopeman and Davidson. Plaintiff alleges that all of this was done in retaliation for her having filed prior lawsuits against Lopeman and Davidson and for having filed actions against Dwight Correctional Center where Thompson is the warden.

## II.
## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

## III.
## LEGAL STANDARD GOVERNING RETALIATION

To establish a prima facie case of First Amendment retaliation, Plaintiff must establish that (1) [s]he engaged in activity protected by the First Amendment, (2) [s]he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Defendants have claimed that, even if they concede the first two prongs of the *Massey* test, Plaintiff cannot sufficiently allege the third, that Plaintiff's prior litigation was "at least a motivating factor" in the Defendants' actions in disciplining her. (d/e 57 p.9).

## IV.
## ANALYSIS

**A.      Plaintiff cannot establish that Defendants' Actions evidenced a retaliatory motive.**

Plaintiff asserts that Hampton's claim that Plaintiff had assaulted her is "untrustworthy" and should not have been considered by Defendants Lopeman and Davidson. Plaintiff does not, however, advance any explanation as to why Hampton would have unjustifiably accused Plaintiff of assault. As noted by Defendants, Plaintiff refused to cooperate in the investigation so defendants only heard Hampton's version of events. Lopeman and Davidson believed Hampton's assertions which were corroborated by the physical evidence that; Hampton and Plaintiff shared a cell, Hampton had sustained injuries to her face, Hampton claimed that she had been attacked from behind by Plaintiff and had not put up a fight; Hampton's injuries and Plaintiff's absence of

4

injury were consistent with this account; Hampton had originally denied injury at the hands of Plaintiff as she was afraid of Plaintiff and; Hampton asked to be transferred to a different cell.

Plaintiff claims that the investigation was faulty. There were, however, only two people involved in the event, Plaintiff and Hampton. Both of these individuals were interviewed. Only Hampton was found to be injured. Plaintiff does not tell us in what respects she believes the investigation was faulty. Plaintiff has not provided a scintilla of evidence as to why Hampton would have falsely accused her and why defendants were wrong to have acted upon Hampton's allegations.

Plaintiff is also critical that she was cited for not cooperating with the investigation after having been Mirandized and told she didn't have to answer. Plaintiff hadn't been told she could *not* answer, only that there could be potential consequences to her answers. Plaintiff's constitutional rights were protected, not violated, when she was Mirandized. She had a choice to give a statement and cooperate in the investigation or not. She chose the latter, leaving the Defendants with Hampton's unopposed account of the events.

Plaintiff would have us believe that the accusations, investigation, hearing and discipline were all undertaken to punish her for her having filed lawsuits against Lopeman, Davidson and the Dwight Correctional Center where Thompson is the warden. She does not explain why Hampton would have provided "untrustworthy" reports and participated in such a scheme. She only alleges as generally untrue, Defendants' claims that they undertook the investigation in good faith without a retaliatory motive. Defendants Thompson and Davidson, however, have provided uncontroverted affidavits indicating that there was no retaliatory motive in their actions.

Defendants have offered a non-retaliatory motive for their investigation and disciplining of plaintiff. The burden then shifted to Plaintiff to sufficiently allege that this defense was

merely pretextual. Plaintiff has provided no credible argument that defendants' true motive was retaliation. Plaintiff, in fact provides nothing but unsupported speculation as to defendants' motive in disciplining her. This speculation is not enough to defeat the motion for summary judgment with which she is faced. "Even though [Plaintiff's] verified complaint alleged retaliation, his speculation regarding the officers' motive cannot overcome the contrary evidence that [defendants'] actions were benign , *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008), speculation concerning retaliatory motives cannot create a genuine issue of material fact.)

Plaintiff has provided no arguments to rebut defendants' claimed non-retaliatory motive. Similarly, she has provided no arguments as to why Hampton would have falsely accused her. "[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper. *Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 406 (7th Cir.1998) ( "[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").

For these reasons, Plaintiff has failed to establish that there is a genuine, triable issue of fact as to her claim that refute Defendants retaliated against her in violation of her First Amendment Constitutional rights.


### B.    Qualified Immunity.

Government officials performing discretionary functions are generally shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Harlow v. Fitzgerald,*

102 S.Ct. 2727, 2738 (1982). To defeat the defense of qualified immunity, "[Plaintiff] must demonstrate (1) that the [Defendant's] conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis v. Downy,* 581 F.3d 467 (7th Cir. 2009) (citing *Siegert v. Gilley,* 500 U.S. 226, 232 (1991)). As for the first portion of the test, it is well established that a Plaintiff has a constitutional right to be free from retaliation. Defendants, however, deny that they retaliated against Plaintiff and have provided affidavits swearing that their motives in investigating and disciplining Plaintiff were benign. As a result, the burden shifted to Plaintiff to allege that these denials were merely pretextual. She has failed to do so and has not substantiated her First Amendment claim. Even if we were to concede this point, however, Plaintiff would still fail under the second portion of the inquiry as she has not alleged that defendants, through their alleged misconduct, violated a clearly established right.

In *Lewis* the court explained that "the right that [Defendant] allegedly violated must be clearly established 'in a particularized sense.'" *Lewis* at 478 (citing *Hill v. Shelander,* 992 F.2d 714-718 (7th Cir. 1993).) "This does not mean that the "very action in question" must have previously been held unlawful. (internal citations omitted). Instead, we must determine whether, operating under the state of the law as it existed at the time of relevant events, "a reasonable officer would have known that the particular action at issue ... was unlawful." *Id.* at 479, (quoting *Hill* at 718, "the contours of a constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")

In the case at hand, Plaintiff has not alleged that a reasonable officer would have known that the investigation of Hampton's claims and subsequent disciplining of Plaintiff were "unlawful acts." To the contrary, Defendants could reasonably have believed, and have provided affidavits attesting to their belief, that their actions in investigating and disciplining Plaintiff

were lawful acts, part of their discretionary function as prison officials. As a result, Plaintiff fails to offer argument or otherwise establish a material issue of fact in opposition to Defendants' claims of qualified immunity.

## CONLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [d/e 57] is GRANTED. Plaintiff's motion for Summary Judgment is DENIED.

**IT IS, THEREFORE, ORDERED that:**

1.    Defendants' motion for summary judgment is GRANTED [d/e 57].

2.    The Clerk of the Court is directed to enter judgment in favor of Defendants Davidson, Lopeman and Thompson and against Plaintiff Germaine Elcock pursuant to Federal Rule of Civil Procedure 56(c).

3.    All pending deadlines, settings and Motions are vacated.

4) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

5) If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal

perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.


July 17, 2014
ENTERED

s/ James E. Shadid
JAMES E. SHADID
CHIEF UNITED STATES DISTRICT JUDGE